UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REGINALD McFADGEN, 91-A-4082,                           03-CV-0139E(F)

        Plaintiff,

  -vs-                                                                                                MEMORANDUM

RANDY JAMES,                                                                                              and
SAM MARTINO,
JAMES CONWAY, First Deputy,                                                                    ORDER[1]
DAVID FIX and
PETER CORCORAN, Sergeant.

        Defendants.
_____

Plaintiff Reginald McFadgen ("McFadgen") commenced this action pursuant to 42 U.S.C. §1983 alleging that defendants failed to protect him while he was incarcerated at the Attica Correctional Facility ("Attica"). Specifically, McFadgen alleges that defendants either themselves entered or knew of others who entered McFadgen's cell and contaminated his food and personal hygiene products with "chemicals or substances" which contamination resulted in his experiencing significant pain throughout his body. McFadgen also alleges that defendants failed to ensure his safety by placing him in a cellblock in which was housed another inmate with whom McFadgen had previously had an altercation. McFadgen alleges that his placement within that cellblock resulted in his stabbing by a third inmate. Pending before the Court is Defendants' Motion for Summary Judgment. McFadgen has filed numerous responses to the Motion simply consisting of reiterations of his allegations of relevant events. Each of

---

[1]This decision may be cited in whole or in any part.

these responses is signed by a notary, but none indicates that the statements contained therein are made under oath.

## FACTS

McFadgen was transferred from Great Meadow Correctional Facility to Attica in January 2002.[2] On August 28, 2002 defendant Conway received a letter from McFadgen requesting that he be transferred from his current housing location due to a fight he had been involved in and also due to problems he had with staff, particularly defendant Fix who was allegedly continuing to poison McFadgen's food and personal hygiene items.[3]  Conway Dec. ¶13, Ex. D.  That letter indicated that McFadgen was currently housed in B-Block, 21 Company. McFadgen alleged that he had been involved in a fight with an inmate Torres, who was housed in B-Block, 16 Company.  McFadgen alleged that he feared reprisals from Torres and "his people."  McFadgen was moved to D-Block on September 1, 2002.  Conway Dec. ¶14.  He was then moved to A-Block on September 15, 2002. *Ibid*. He was then moved to C-Block on September 25, 2002.[4] *Ibid*.  Finally, he was returned to B-Block on November 2, 2002.  Conway Dec.

---

[2]McFadgen alleges that he was originally transferred to Attica from Clinton Correctional Facility after his numerous complaints that the staff at Clinton was poisoning his food and personal hygiene items.  McFadgen alleges that he complained about similar poisonings at Attica and he was thereafter transferred to Great Meadow.  From Great Meadow, he alleges he was transferred back to Attica.  McFadgen does not allege a time frame for any of this activity.

[3]Defendants deny tampering with McFadgen's food or hygiene items and deny knowledge of anyone else doing so.  Fix Dec. ¶3; Corcoran Dec. ¶8; James Dec. ¶¶6, 8; Conway Dec. ¶¶7-8.

[4]In his response to the Motion, McFadgen also complains that once he was placed on A-Block, he was placed in a school program but was then transferred to C-Block and could not participate in the school program as C-Block was a metal shop program location.  McFadgen, however, also made complaints while he was housed on A-Block that his life and health were in danger and that he was "mark[ed] for death," after which he was transferred to C-Block. *See* Response at 14, Factor 27.

¶14.[5]  McFadgen was placed on 13 Company which was two floors away from where inmate Torres was allegedly housed.

McFadgen was seen by Attica medical staff on numerous occasions due to his complaints of poisoning.  McFadgen alleges that the doctors never did anything for him.  The defendants' affidavits and the attached exhibits indicate that, upon investigation, the medical staff could find nothing wrong with McFadgen.  James Dec. ¶9.  In fact, a Sergeant Szczepanowski reported on February 7, 2002, that after investigating McFadgen's complaints of poisoning, McFadgen admitted to Szczepanowski that he had lied about the alleged poisoning in an attempt to obtain an early release from the Special Housing Unit ("SHU").  Conway Dec. ¶9, Ex. A.

On November 6, 2002, McFadgen allegedly had an altercation with inmate Torres and three others.  Conway Dec. ¶16.  McFadgen did not file a report of any such altercation.  *Ibid*.  No where in his response to the Motion does McFadgen allege that he was involved in an altercation on November 6, 2002.  On November 7, 2002, McFadgen was stabbed in the back by another inmate, Toal, while leaving his cell for his morning meal.  Conway Dec. ¶11.  McFadgen had no prior history of difficulty with inmate Toal and never advised Attica staff that there could be any conflict with inmate Toal or that there was any connection between inmates Torres and Toal. Defendants had no reason to suspect that McFadgen was in any danger from inmate Toal.  Conway Dec. ¶15; James Dec. ¶10; Fix Dec. ¶11.

---

[5]This series of transfers seems to have been initiated by complaints McFadgen made to Attica officials regarding his continued poisoning on the other cellblocks.

DISCUSSION

A motion for summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCvP 56(c). In determining whether genuine issues of material fact exist, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson* v. *Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986) (internal citation omitted). However, to defeat a motion for summary judgment, the nonmovant cannot simply rely on allegations in the pleadings that merely raise "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, at 256.

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo* v. *Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994). Upon a motion for summary judgment, the Court's role is limited to determining whether there exists a genuine issue of material fact requiring trial.

McFadgen alleges two violations of his Eighth Amendment rights. He asserts that the defendants failed to protect him from other inmates which resulted in his stabbing on November 7, 2002. He also alleges that the defendants either themselves placed chemicals or other substances in his food and personal

hygiene items or otherwise failed to protect him from other Attica employees who placed chemicals or other substances in his food and personal hygiene items. To establish a violation of the Eighth Amendment, a prisoner plaintiff must demonstrate that the alleged violation is sufficiently serious and that the defendant acted with a sufficiently culpable state of mind. *See Wilson* v. *Seiter*, 501 U.S. 294, 298 (1991). When the claim is one for failure to protect, the deprivation is sufficiently serious if the inmate is incarcerated under conditions imposing a substantial risk of serious harm. *Farmer* v. *Brennan*, 511 U.S. 825, 833 (1994). Furthermore, the defendant must have acted with deliberate indifference to the inmate's health and safety. *Wilson*, at 302-02. Such deliberate indifference is demonstrated when the defendant "knows of and disregards an excessive risk to inmate health and safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, at 837.

McFadgen has provided no admissible evidence that his housing on B-Block posed a substantial risk of serious harm. McFadgen informed Attica officials of his conflict with inmate Torres. After informing officials, McFadgen was not housed on the same company as Torres. There is no indication that McFadgen ever advised Attica officials that he was in danger from or feared inmate Toal who was the inmate who actually stabbed him. Nor does he allege that Toal was, or is, or that he advised officials that Toal was or is an associate of inmate Torres. There is no evidence that McFadgen's conditions of incarceration posed a substantial risk. Moreover, there is no evidence that any of the defendants knew of and disregarded any risk to McFadgen. In fact, it appears that when McFadgen made credible complaints of risk, *i.e.*, his conflict with inmate Torres,

such complaints were taken seriously and McFadgen was not housed with Torres. Thus, the Court finds no genuine issue of material fact as to whether defendants violated McFadgen's Eighth Amendment rights by failing to protect him from other inmates.

McFadgen also alleges that his Eighth Amendment rights were violated when the defendants either poisoned his food and personal hygiene items or failed to prevent others from doing so. McFadgen's claim in this regard is wholly conclusory and unsupported by any evidence. Although he alleges that he suffered poisoning from his food and personal hygiene items, none of the investigations by Attica staff concluded that McFadgen suffered any injury whatsoever. There were no findings made by any medical staff that McFadgen was suffering any ill effects from anything. In fact, McFadgen admitted that some of his complaints of poisoning were falsely made solely in an attempt to obtain an early release from the SHU. McFadgen does not deny that he made such admission. McFadgen has failed to provide any evidence that such tampering actually occurred or that he suffered any injury whatsoever.

## CONCLUSION

Accordingly, the Court concludes that McFadgen has failed to raise a genuine issue of material fact as to whether his Eighth Amendment rights were violated and it is **ORDERED** that defendants' Motion for Summary Judgment is granted and the Clerk of the Court shall take all steps necessary to close the case.

DATED:   Buffalo, N.Y.

        July 18, 2007

                                           */s/ John T. Elfvin*
                                           JOHN T. ELFVIN
                                           S.U.S.D.J.